# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Benjamin F. Gardner, Jr., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Commissioner of Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No.: 9:17-cv-01914-JMC <br><br> **ORDER AND OPINION** |

Plaintiff Benjamin F. Gardner, Jr. ("Plaintiff") brought this action against the Commissioner of Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1.) In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 for the District of South Carolina, this matter was referred to Magistrate Judge Bristow Marchant ("Magistrate Judge"). The Magistrate Judge issued a Report and Recommendation ("Report") and recommended that the court affirm the Commissioner's decision. (ECF No. 17.) For the reasons set forth herein, the court **ACCEPTS** the Report of the Magistrate Judge and **AFFIRMS** the final decision of the Commissioner.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards which this court incorporates herein without a full recitation. (ECF No. 17 at 3-12.) As brief background, Plaintiff applied for DIB and SSI on September 17, 2015, alleging disability as of January 1, 2015. (ECF No. 10-5.) After review by agency medical consultants, the Commissioner denied Plaintiff's claims initially

and upon reconsideration. (ECF No. 10-3 at 28; ECF No. 10-4 at 11.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ conducted the hearing on December 19, 2016. (ECF No. 10-2 at 30-39.) Following the hearing, the ALJ denied Plaintiff's claims in a decision issued on January 30, 2017. (*Id.*) Following the decision, Plaintiff submitted a request for review of the ALJ's decision to the Social Security Administration Appeals Council ("the Council"), and the Council denied Plaintiff's request for review. (*Id.* at 2-7.) Thus, the ALJ's decision became the final decision of the Commissioner. *See Moody v. Chater*, 1995 WL 627714, at *1 (4th Cir. Oct. 26, 1995) (stating that an ALJ's decision was the final decision of the Commissioner when the Council denied a request for review); *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) (holding that the Commissioner's "final decision" includes when the Council denies a request for review of an ALJ's decision). Plaintiff filed the instant action on July 19, 2017. (ECF No. 1.)

## II. STANDARD OF REVIEW

### 1. The Report and Recommendation

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. The court reviews *de novo* only those portions of the Report and Recommendation to which specific objections are filed. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The court reviews those portions which are not specifically objected to only for clear error. *Id.* at 316. The court may accept, reject, or

modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

**2. The Social Security Act**

The Social Security Act provides that "[t]he findings of [the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The scope of the court's review "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The decision of the Commissioner is supported by substantial evidence if the decision is based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Fourth Circuit has defined substantial evidence as "more than a mere scintilla[,] but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This standard precludes *de novo* review of the factual circumstances and the court cannot substitute its own judgment for that of the Commissioner. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)

### III. DISCUSSION

In his Objection to the Report, Plaintiff first argues that the ALJ failed to properly explain his finding that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work. (ECF No. 19 at 1-4.) In particular to the RFC, Plaintiff disagrees with the Magistrate Judge's Report and alleges the following: (1) the ALJ failed to properly consider his fatigue and inability to sleep, and the Appeals Council failed to properly consider new evidence documenting his sleep apnea; (2) the ALJ failed to explain the medical necessity of his use of a cane; and (3) the ALJ failed to explain how he could perform frequent stooping. (*Id.*) Secondly, Plaintiff

maintains that the ALJ failed to properly evaluate subjective evidence regarding Plaintiff's pain and other symptoms. (*Id.* at 4-5.) The court will consider each objection in turn.

**1. Residual Functional Capacity**

"[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). Social Security Ruling 96-8p defines RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means [eight] hours a day, for [five] days a week, or an equivalent work schedule." *Id.* "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* The Fourth Circuit has stated that a *per se* rule requiring remand when an ALJ does not perform an explicit function-by-function analysis is inappropriate, particularly where the ALJ does not discuss functions that are irrelevant or uncontested. *Mascio v. Clovin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (alterations omitted) (quoting *Cichocki*, 729 F.3d at 177).

A. Plaintiff's Sleep Impairments

Plaintiff alleges that the ALJ failed to properly consider his "symptoms of fatigue and an inability to sleep" when determining his RFC. (ECF No. 19 at 1.) In the Report, the Magistrate

4

Judge noted that the ALJ considered Plaintiff's complaints of anxiety and an inability to sleep from his examination at the Sandhills Medical Foundation in June 2016. (ECF No. 17 at 15). The examination diagnosed Plaintiff with idiopathic insomnia exacerbated by emotional distress; the ALJ also opined that the examination was "unremarkable" and that Plaintiff did not return for further treatment. (*Id.*; ECF No. 10-2 at 35.) In his Objection, Plaintiff argues that it is not the diagnosis of insomnia, but the limitations of Plaintiff's fatigue and inability to sleep which are relevant. (ECF No. 19 at 1.) Regardless, the record demonstrates that, in considering Plaintiff's insomnia, the ALJ considered whether any potential inability to sleep would affect Plaintiff's ability to work when determining Plaintiff's RFC. (*See* ECF No. 10-2 at 35.) Further, though Plaintiff reported insomnia and feelings of fatigue at multiple points in the administrative record (*see*, *e.g.*, ECF No. 10-8 at 8, 20, 71; ECF No. 10-9 at 33-34, 51-54), there are multiple points within the record where Plaintiff did not complain of complications with sleep (*see*, *e.g.*, 10-8 at 46-48, 50-51, 55-57; ECF No. 10-9 at 11-13, 16-17, 21-21, 46-47). During a visit to Camden Heart Care, LLC, which occurred after his examination at the Sandhills Medical Foundation, Plaintiff denied having insomnia. (*See* ECF No. 10-10 at 25-26.) Therefore, the ALJ properly considered Plaintiff's complications with sleep, and the decision of the ALJ was supported by substantial evidence. *Cf. Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Additionally, Plaintiff submitted newly obtained evidence before the Council, consisting of a sleep study conducted on January 29, 2017, which produced results consistent with sleep apnea (ECF No. 10-2 at 18-20), and findings from a clinic visit on February 8, 2017, which concluded that the sleep study showed evidence of obstructive sleep apnea and recommended evaluation and treatment by a pulmonologist (ECF No. 10-2 at 14-18). The Council denied Plaintiff's request for review and declined to consider this evidence, finding that the newly

submitted evidence did not demonstrate a reasonable probability that it would change the outcome of the decision and that the February 8, 2017 visit did not relate to the period on or before the date of the ALJ's decision. (ECF No. 10-2 at 3.) The court agrees with the Council's determination.

The Council must consider evidence submitted with a request to review where the evidence is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir.1990)); *see also* 20 C.F.R. § 404.970. As noted above, the ALJ considered the concern that Plaintiff struggled with sleep issues when determining the RFC. Thus, the newly submitted evidence is not material given that the ALJ had already considered Plaintiff's difficulties with sleeping. *Wilkins*, 953 F.2d at 95-96. As such, the Council did not err in finding that there was not a reasonable probability that the evidence would change the outcome of the decision. *See* 20 C.F.R. § 404.970.

### B. Plaintiff's Cane Use

Plaintiff further alleges that the ALJ failed to properly consider the medical necessity of his use of a cane. (ECF No. 19 at 2.) However, the ALJ's decision considered Plaintiff's testimony that he "uses a non-prescribed cane" and that Plaintiff had "a slow, mildly antalgic gait, but no problems with walking or balancing." (ECF No. 10-2 at 36.) The ALJ's decision also noted that the record mentioned Plaintiff's use of a cane but that few clinical examinations found a gait problem and that "[t]he overwhelming weight of treatment records have failed to document any gait problems." *Id.* Moreover, this court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). As such,

6

the record demonstrates that the ALJ specifically considered Plaintiff's use of a cane against the other evidence in the record.

### C. Ability to Perform Frequent Stooping

Plaintiff also contends that the ALJ did not properly explain how he could perform frequent stooping, given that he has a limited range of motion in his lumbar spine, a reduced range of motion in his left hip, and positive straight leg raise tests. (ECF No. 19 at 3.) Plaintiff appears to be referring to an examination conducted in December 2015. (*See* ECF No. 10-9 at 2-9.) However, the ALJ specifically addressed this examination, noting that the examination was "unremarkable" and that "most of the [examiner's] diagnostic impression appears to be based upon [Plaintiff's] reported history." (ECF No. 10-2 at 35.) Plaintiff also takes issue with the explanation offered by the Magistrate Judge in the Report that, although the ALJ gave limited weight to the opinions of the state agency medical consultants, the ALJ only gave limited weight to the consultant's findings as to Plaintiffs exertional limitations and agreed with the findings of the consultants as to Plaintiff's nonexertional limitations (ECF No. 17). Plaintiff argues that the Magistrate Judge's finding is a *post hoc* argument, and the court may not substitute for the reasoning provided by the ALJ in the record. (ECF No. 19 at 3.) However, Plaintiff does not address the Magistrate Judge's finding that even if the court were to determine that the ALJ committed error in concluding that Plaintiff could perform frequent stooping, such an error was harmless. (ECF No. 17 at 17-18.)

It is true that the court cannot substitute reasoning provided by judges and counsel where an ALJ fails to provide his or her own reasoning and factual findings. *See Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ–not post hoc rationalizations that attempt to intuit what the adjudicator

7

may have been thinking."). However, for remand to be proper, the party who would benefit from the remand holds the burden of proving that the ALJ's error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Thus, to obtain remand, Plaintiff must demonstrate that, absent the ALJ's purported error in determining his RFC, the ALJ would not have been able to find that Plaintiff could perform other jobs. *See generally* 20 C.F.R § 404.1520(a)(4)(v). As noted by the Magistrate Judge, the ALJ relied on vocational expert testimony that Plaintiff would be able to perform the occupations of assembler, DICOT 706.684-022; inspector/hand packager, DICOT 559.687-074; and packing machine operator, automatic, DICOT 920.685-082. (ECF No. 10-2 at 38.) Of these three occupations, only the occupation of inspector/hand packager requires any stooping, and none require frequent stooping. *See* DICOT 559.687-074 (G.P.O.), 1991 WL 683797 (Jan. 1, 2016) (noting that stooping is performed "occasionally"); DICOT 706.684-022 (G.P.O.), 1991 WL 679050 (Jan. 1, 2016) (noting that stooping is "not present"); DICOT 920.685-082 (G.P.O.), 1991 WL 687943 (Jan. 1, 2016) (noting stooping is "not present"). As such, regardless of whether the ALJ erred in finding that Plaintiff could frequently stoop, Plaintiff has not met his burden of showing that such an error was harmful and therefore remand would not be proper. *See Shinseki*, 556 U.S. at 409-10.

**2. Subjective Evidence**

Finally, Plaintiff asserts in his Objection that the ALJ failed to properly consider his subjective reports about his symptoms. (ECF No. 19 at 4-5.) An ALJ must follow a two-step process in order to evaluate the intensity, persistence, and limiting effects of symptoms in disability cases. *See Craig v. Chater*, 76 F.3d 585, 594-596 (4th Cir. 1996); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, "there must be objective medical

evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig*, 76 F.3d at 594 (emphasis omitted) (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)). This is not equivalent to requiring objective evidence of the pain or other symptoms themselves. *Id.* Once a claimant has met his or her burden under the first part of the test, at the second step, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1)). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence . . . .'" *Id.* (citing 20 C.F.R. §§ 416.929(c)(2), 404.1529(c)(2)). "Although a claimant's allegations about [his or] her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . ." *Id.*

In evaluating Plaintiff's subjective statements concerning his symptoms, the ALJ determined at the second step of this process that "the alleged severity of the claimant's subjective complaints . . . is not consistent with the totality of the objective evidence." (ECF No. 10-2 at 37.) In making this determination, the ALJ cited to evidence in the record demonstrating that Plaintiff did not complain of the ineffectiveness or adverse side effects regarding medication used to control his symptoms: Plaintiff occasionally used a non-prescribed cane, even though the "overwhelming weight" of medical evidence did not document any gait problems; Plaintiff could perform limited daily activities and personal care tasks, including walking his dog, preparing simple food, washing dishes, and sitting in a recliner; Plaintiff performed household chores; and Plaintiff aided a neighbor with a plumbing issue by going under the house, cutting out a defective piece of pipe,

9

and replacing it (though he was winded after). (ECF No. 10-2 at 36); *see also* 20 C.F.R. § 416.929(c)(3)(i) (listing "daily activities" as factors relevant to evaluating the severity of a claimant's symptoms). The ALJ also considered the following evidence: in 2015, Plaintiff did household chores, went to the grocery store, and rested and relaxed; in 2016, Plaintiff reported feeling well with no complaints, that he was exercising infrequently, and he was able to do his activities of daily living and participate in recreational activities without limitations; and cardiology records showed that Plaintiff had good exercise habits, no physical disability, and normal activities of daily living. (*Id.* at 36-37.) The record shows that the ALJ properly applied the correct law in evaluating Plaintiff's subjective statements regarding his pain and symptoms, and that there was substantial evidence in the record to support the ALJ's findings. *See Craig* 76 F.3d at 594-596; 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

### III. CONCLUSION

After a thorough review of Plaintiff's Objection (ECF No. 19) and the Magistrate Judge's Report (ECF No. 17), the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 17) and **AFFIRMS** the decision of the Commissioner of Social Security Administration.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 6, 2018
Columbia, South Carolina